Case of the day will be number 23-12754, Kevin Lewis v. Sheriff of Fulton County. Council, you've saved three minutes for rebuttal. Is that correct? That's correct. You may begin. Good morning, Your Honors. May it please the Court, I'm Jake Kennedy. I'm here for the appellant, Kevin Lewis. I'm joined by Mr. Radford and Mr. Lewis is in the seats behind us. Your Honors are welcome to call me counsel if that's easier. You caught that, huh? Mr. Lewis' appeal presents three questions to the Court, the first of which I think is the most salient and dispositive of his appeal that regards the District Court's misapplication of the summary judgment standard to Mr. Lewis' claims under the ADA and Rehabilitation Act. The parties here all agree that Mr. Lewis is blind and that because he is blind, he is disabled for the purposes of the ADA and Rehab Act. But the District Court still found that he did not state a claim for disability discrimination under these laws because of the second and third elements of the Prima Fosch case regarding whether he was denied equal participation in the benefits, services, and programs offered at the Chatham and Fulton County Jails. The record, however, contains abundant, undisputed evidence that that is exactly what happened. Both of these jails have implemented these kiosk systems, which serve as a kind of one-stop shop to a variety of services and programs that these jails offer, including access to the phones, such as to call an attorney, access to the grievance process, that's how these grievances are filed, access to the inmate handbook, which contains important information, of course, about... Counsel, I think it would be helpful if you could split the claims because I think they're different for Chatham County Jail and then for Fulton County, so maybe you could split it. I think that would be easier. Yes, Your Honor. Some of the evidence, and I will discuss the evidence that's different for each jail, this kiosk issue, though, is the same at both. And that's why I think it's important to lead with that. There's other evidence in particular with regard to deliberate indifference and how that manifested at each jail, but in terms of the actual services and programs that Mr. Lewis was denied, the most important, these kiosk systems, use of the inmate handbook, that's common to both jails. And, of course, the reason that he was unable to access these kiosks is the same at both jails. It's because both kiosks use a touchscreen interface, which, of course, as a blind person, Mr. Lewis is not able to access. Can I ask you just a quick question? So I have my head around the current state of the dispute. There were claims for both damages and adjunctive relief. Damages require you to show deliberate indifference, right? I believe that's true for the Rehabilitation Act. I don't think that's strictly necessary in the case of the ADA for people like Mr. Lewis, where you have these independent other constitutional violations present, such as access to courts and deliberate indifference to serious medical needs. That's the holding in Tennessee v. Lane. I think under the complaint, didn't you only allege deliberate indifference to medical needs? Well, we're not asserting independent claims for these other constitutional violations. We did allege, specifically in the complaint, that because part of the disability discrimination here was Mr. Lewis' inability to use the phones and contact an attorney, which, of course, isn't access to the courts. And you've dropped the ankle monitoring that was in the complaint. I don't see that anywhere in the briefs, correct? Correct. We did not emphasize that because that... So you've waived it. You've abandoned that on appeal, correct? The ankle monitoring issue, I deferred after he was released, yes. As far as the evidence of deliberate indifference, which I do think we have and certainly is enough for damages under the ADA, as well as the Rehabilitation Act, we have evidence that Sheriff Wiltshire at Chatham County had actual knowledge of Mr. Lewis' disability and special needs. So this is helpful. So you don't now deny that actual knowledge is a prerequisite to showing deliberate indifference? Because I think in your brief you said, where's this coming from? It is a prerequisite for Rehabilitation Act because the Rehabilitation Act is spending clause jurisprudence. And it's sufficient in the context of the ADA because deliberate indifference is tantamount to intentional discrimination, which is enough to abrogate sovereign immunity under Title II's own right of action. But it's not strictly necessary because when you have these other constitutional violations as set forth in Tennessee v. Lanning, U.S. v. Georgia, you have that abrogation of sovereign immunity even without intentional discrimination. And that's, I think, kind of the complicated part of this appeal. That's the second question that I don't think the court actually needs to reach. And it is somewhat narrower than when we briefed this issue because of the court's recent decision in the Cuyahoga County Schools case. The question we really presented technically was whether claims against a public entity that receives federal funding, whether claims under the ADA and Rehabilitation Act are duplicative. And one possible difference was the remedies that are available in that scenario. So can we go back to the actual knowledge that you were referencing? My understanding from reading the record is that the sheriff for Chatham County did speak to the doctor, but he referred the doctor to the medical provider. And the medical provider then, I guess, he requested the necessary treatments for your client. I don't believe that's in the record. I don't think there's any evidence at all what the doctor did with the information that the doctor offered. Entry 73-1, 36-24, docket entry 89. But again, once Mr. Lewis went to Chatham County Jail, then he was there for less than 48 hours. He was placed in an ADA-approved cell. He was provided a cell phone that was accessible for blind inmates. I understand he doesn't read Braille. His requests for medical accommodations were documented. They requested the eye drops that he needed, but that needed to be ordered from the pharmacy, and it arrived by the time that he was being transported then to Fulton County. But how exactly were they acting with deliberate indifference when they did all these things? Explain to me. Well, Your Honor, so there's actually no evidence that any of Mr. Lewis's accommodation requests were documented. The fact that he is blind appears in his medical records, but there's no evidence that he requested any help with the grievance system, no evidence that he requested any help with access to the kiosks, no evidence that he… Were the eye drops ordered? The eye drops. Some eye drops were ordered, although not the eye drops that Mr. Lewis has actually prescribed. And that's the evidence, of course, that the district court focused on, but the district court's decision completely omits any discussion in its evidence of these kiosk issues, of the access to the courts, of the policy failures, which, again, are common, but for different reasons at Chatham and Fulton County, these policy failures to document, to train staff on how to assist people with disabilities. Again, at Chatham County in particular, there is evidence that the staff who are officially responsible for helping people like Mr. Lewis, these staff are, according to the policies, required to provide this assistance, but at Chatham County, there is a deliberate choice to withhold information from these staff about who needs accommodations, who is entitled to request accommodations. For example, Miami-Dade County in this court's Burkle decision a few years ago would affix a stamp to disabled inmates' badges so that staff would know, okay, this person needs assistance. At Chatham County, they deliberately withhold that information because of HIPAA concerns. At Fulton County, the issues are a little bit different when it comes to evidence of deliberate indifference. Most notably, the ADA policies at Fulton County have not been updated or even reviewed in 22 years. They've not been updated since 2002, which, of course, predates the ADA Amendments Act and a variety of other developments in ADA case law. And Sheriff Labat's designated representative even testified that such a failure can only be the result of a deliberate choice. I mean, it's 22 years, and some of the content of these ADA policies is shocking. Again, that's a word that the designated representative of the Sheriff used. Essentially, these policies, and further at Fulton County, again, the designated representatives testified that even though they have these official policies requiring staff to provide aid to people like Mr. Lewis, staff have complete discretion to ignore this responsibility if they're even aware of it, and there's no evidence that they're aware of these duties. There's no evidence that they're ever trained, okay, if somebody needs help, you have to help them. But even if they were trained, they have discretion to ignore this help if they're busy. They have discretion to ignore this help if they're even skeptical that the person actually needs assistance, which, of course... What do you mean when you say they have discretion to ignore the inmate's request? I mean, is that written down in a policy somewhere? It's not in the policy, but it's exactly what the representatives at the 30B-6 deposition testified is the practice that if somebody asks for help and you're skeptical that they need help, for example, if you don't think that Mr. Lewis is actually blind, which, again, this is exactly the kind of discrimination the ADA was designed to root out because some disabilities are not obvious, if staff doesn't believe this guy actually needs help, they're allowed to ignore him. And the remedy, according to the Sheriff's designated representative, is that the inmate can then file a complaint later, which, of course, doesn't help in this scenario. So that's how you get into this massive systemic policy failure. And, in fact, I think effectively when you have so much evidence that the actual practices at both jails are the exact opposite of what the policies themselves say, that's compelling evidence. It's certainly evidence that a jury could conclude, okay, here we have deliberate indifference. These policies are saying this harm is substantially likely. This harm is going to occur. That's why we have these policies. And then you don't train the policies, you give the staff discretion to ignore the policies, you don't enforce the policies. That's a deliberate choice, especially when it's been going on for, ostensibly, at Fulton County 22 years. As to the mootness issue, because I only have a few seconds left here, I want to make sure we cover that. The district court ruled that even if Mr. Lewis doesn't have a claim for damages that his claims are moot because, as a matter of law, prisoners' claims become moot when they are released from prison. I think that's different, though, and I have not found any case law in this circuit that says that the same rule applies to pretrial detainees. And that's important because pretrial detainees, of course, are both more – because you don't need to be convicted, you only need to be arrested, and more capable of evading review because you're not – it's far less likely that you're going to be able to remain in jail for the entire amount of time necessary to litigate a challenge to the conditions of your confinement. Those are, I think, the most important issues. You're going to be eating into your rebuttal time. You can do that, but – No, I think I'll save that time, but thank you, Your Honor. All right. Thank you. Mr. Bowman? Yes. Good morning, Your Honor. May it please the Court. Brad Bowman representing Fulton County Sheriff Patrick Labatt. Your Honor, in this case, one of the issues that is important to put into context with respect to the underlying claims is the fact that this claim and the arrest and the detention occurred in August of 2020 during a peak time of the COVID pandemic. And this was – total time from his arrest in Savannah to his release from Fulton County Jail is approximately three weeks. Three weeks, Your Honor, is not an easy or glamorous three weeks. And the events that transpired – however, the events that transpired do not support a finding of discrimination or reversal of the district court's decision, even when viewed in the light most favorable to Mr. Lewis as the non-moving party here on this summary judgment motion. This is a Section 1983 claim at its heart, in addition to the fact that it invokes both the Rehabilitation Act and the Emergency Disabilities Act, as well as the getting to the 14th Amendment claim that was raised related to the – related to the deliberate indifference as was mentioned. One of the keys to the district court's decision is the analysis essentially under the 1983 rubric and the well-developed case law in that area regarding the liability of supervisory officials, which both sheriffs in this case are, both Sheriff Labatt and Sheriff Wiltshire. In the case of Sheriff Labatt, there is one important caveat that may not be entirely clear from the record despite the district court's statements regarding the lack of evidence of sheriff's direct knowledge of any allegedly discriminatory conduct. In August 2020, Sheriff Labatt had not been elected yet. He did not take office until early 2021, and so for him to personally have any knowledge of any of the issues going on is an impossibility. He simply was not there at that time. Even if he had been, or if we consider this as an official capacity lawsuit, him as the representative of the sheriff's office still does not hold up under scrutiny of the elements because there's no evidence that the sheriff did have – even the sheriff at the time, there's no evidence that they had the requisite knowledge of any potential policy violations. No evidence that the sheriff knew that inmates such as Mr. Lewis were requesting help with the kiosk and the employees had the discretion not to give it? In fact, I believe that there's no evidence that they had discretion not to. The practice of – and a good example of why that is the case, Your Honor, is Mr. Lewis was placed when he arrived. He initially went through the screening and intake process, but was relatively quickly placed into the medical unit directly where there is much closer supervision not only by custody staff but by the medical staff as well for inmates who have medical conditions including disabilities such as Mr. Lewis. He was not placed into the general population. He was placed in a cell in the medical unit where he did receive some of the care that he requested. In the context of discrimination claims such as this, particularly in failure to accommodate, the courts have noted that perfect or specific accommodations requested aren't always necessary in terms of clearing the bar that is set for deliberate indifference. In those cases, the fact that there was an attempt made shows that there was not deliberate indifference as in this case Mr. Lewis, again, was placed into the medical unit rather than into the general population. He received drops although he says they were not the correct drops. He received some of the eye drops requested. He received some of the medicine that he requested including some of the over-the-counter medication as well as the pharmacy at the jail is not always stocked with everything that a potential inmate or a potential person with a disability may need. Again, going back to the policy as well, while the policies had not been updated in some time, that in and of itself does not establish that they are either discriminatory or that there is an indifference. The policies themselves require that inmates who make requests for accommodation receive essentially an individualized analysis. They speak to the medical provider who the medical provider has authority that cannot be trumped by the custody staff, generally cannot be trumped by the custody staff unless there is something, sort of an outlier, but essentially the medical staff evaluates the requested need and makes an attempt to provide what has been requested within the bounds of what is permissible and what is safe within the context of the jail. For example, if someone needed, say, metal crutches, that might be a request that needed some massaging or needed to be taken in a different way because you don't want a prisoner walking around with a metal, which can essentially be used as a metal club for safety reasons forever. However, in this case, he did receive that individualized analysis. I believe the record reflects that the medical provider did speak with Mr. Lewis and attempted to get him some of what he had requested, again, including the eye drops that were requested and some of the medication. With respect to the interplay between the ADA, Americans with Disabilities Act claims, and the Rehabilitation Act claims, this court has been very clear in the past that those claims are analyzed concurrently and in the same manner. In those cases, those statutes have been held to be in lockstep. Therefore, when you have the ADA claims, the Rehabilitation Act claims are dispositive of the ADA claims and the same will be true vice versa. That's been made clear in the Silverman case versus Miami-Dade Transit, where this court analyzed both of those statutes and was clear that given the textual similarities between the two statutes, the same standards govern the claims under both, and we rely on cases construing both Title II and Section 504 interchangeably. In other words, whatever we have said or say now about Title II goes for Section 504 and vice versa. Those claims are connected in this case and dispositive of each other. With respect to the issue of deliberate indifference, I believe that that has really kind of already been covered based on not only the fact that in order to overcome the immunity for those types of claims, plaintiffs must know that an underlying constitutional violation occurred, and the only one that was pled in this case, as Your Honor has already mentioned, is the deliberate indifference to the medical need and the fact that assistance was given. While it may not have been perfect or exactly what the plaintiff was requesting, there was an attempt that was made to provide that assistance, and on top of the attempt being made, that attempt was still made even at a time of great need for medical reasons overall in the jail at that point in time due to the fact that it was during the pandemic and the resulting sort of increase in population at the jail due to the slowdown at the courts and all those related issues at that point in time. So there was an effort that was made that really, through record evidence, made it clear that there was no indifference in that case. And with respect to the prospective relief requested, first and foremost, the fact that I think the court would consider that the fact that there was no underlying finding of discrimination is another very compelling reason that the request for prospective relief would be moot. If there's been no discrimination found, what is the prospective relief giving relief to? However, the court was clear in that case as well, in its decision, saying that he, as a plaintiff, cannot establish that this case or this treatment is something that he is likely to suffer again. He's unlikely to be not only arrested and held in Fulton County Jail again, or Chatham County for that matter, but unlikely to have done so in such a chaotic and hectic time as there is not any longer an ongoing global pandemic. And with that, if there are any other questions, I'll defer to co-counsel for his portion of the argument in time. Thank you. Mr. Pretorius. Good morning, judges. I'm here to argue for the Chatham County Sheriff. And I think there's, in this case, a little bit of a what-if situation because in our case, he was held for another agency to be transported. So the time of incarceration was for 30 hours for another agency to pick him up. So he was never put into the housing area where the kiosks and all those things are. In our case, he was put in the holding area, which is about from here to there to the medical staff, from this desk to that desk. In that area, you have medical providers 24 hours a day. You have the security there. And I think the difference here is as well is that the staff for the sheriff's office really only provides security. They are not medical professionals. And so therefore, all those medical accommodations and requests are left up to the medical providers. When Mr. Lewis came into the jail, he was given initial screening. And then he was given an intensive screening after that where they determined what accommodations need to be made. His accommodations included the fact that he had the glasses. The accommodations included his medical. He was provided a cell that's ADA compliant. And in that cell, he had a phone. And under the Telecommunications Act, all phones were made in a specific way. It's not a Braille phone. It's a phone that's all the numbers are exactly the same on every phone. And so they did that back in the day to make sure that all phones are accessible to disabled people. He did make a phone call from the jail. His, I believe it was a doctor, called the sheriff. And the sheriff said that if you have medical things, you need to call the medical provider. And in this case, as the case law holds, is that the sheriff can make sure that any medical requests go to the medical provider. That's been case law for years where it says that the medical provider determines that there's a consideration for reasonable accommodations. They will contact someone in security, and those accommodations will be met by them. And the sheriffs are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. Since he was only there for 30 hours, all his accommodations were met. And they were held for him so that they could discuss whether he could have the glasses. But that wouldn't be until after he had already left jail. If he had remained at the jail, those accommodations would have been discussed between the sheriff and the medical providers to make sure that he has those accommodations. But they also have to take into consideration any security with that. Because it's a metal object, and they can pick locks. They can use it for any kind of security issues. So... His glasses were wire glasses. Yes, that's correct. All right. And that's all I have. Thank you so much for talking. Thank you. Mr. Kananeshu, did I say that right? Yes, I'm sorry. Real quickly, a few things I want to address just in rebuttal. First of all, I think it's clear that the COVID pandemic is irrelevant in many ways to the issues he suffered at Fulton County because it has nothing to do with his inability to access the kiosks. And secondly, I want to emphasize that because Mr. Bowman brought this up, the reason there was no actual knowledge at Fulton County is because of the exact problem that we're complaining about here. There was no documentation of any of Mr. Lewis's numerous constant requests for assistance to, as he explained, anybody who was walking by that he thought might be able to help him. Third, I want to emphasize what we have here is only an official capacity claim. Since that came up, I wanted to make that clear. The claim is under, at least on appeal here, the claim is under Title II for these violations of this disability discrimination that also amounts to these independent access to the courts and issues. And again, I want to emphasize that those are recognized as rights of action under Title II under Tennessee v. Lane and U.S. v. Georgia. And to rule that deliberate indifference is strictly necessary for ADA Title II claims, even when you have these other independent constitutional violations, to rule that it's necessary would completely destroy United States v. Georgia and Tennessee v. Lane. There would be no point in having a right of action for these other constitutional violations when deliberate indifference is strictly necessary anyway, when intentional discrimination is strictly necessary anyway for Title II claims. Lastly, I want to just finish what I was saying about mootness. It is under Supreme Court precedent, this court's precedent. It is a reasonableness analysis. The question is, in part, whether there is a reasonable expectation that the same controversy will recur. And reasonably, there's only one conclusion to draw from this record, and that is that if Mr. Lewis is arrested again for any reason, even prosecutorial misconduct, as in this case, he is going to be subjected to these same problems. For example, and I have the quote here now. This is from the Fulton County designated representative. She said, anything we do, we usually log it in, but a lot of times we're so busy we can help. We just help make sure the inmate is okay and move on later. Right, the officer could investigate and decide whether the inmate is putting them on or not, right. But ultimately, that's a decision the officer has the discretion to make, right? Yes. There's no evidence that anything different would happen. Same at Chatham County, because Mr. Pretorius brought this up. I want to point out that I'll just call you to the point in the brief. It's at pages 11 and 12 of their appeal brief. The policy is the exact opposite of what the official practice is. I discussed that in detail in the brief. Thank you.